# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
### AUSTIN DIVISION

GEORGE HOWARD

vs.                                                    Case No. 1:21-cv-00781-LY

AMERIFIRST FINANCIAL, INC. AND HELEN
ROBINSON

---

## PLAINTIFF'S FIRST AMENDED COMPLAINT

---

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COMES GEORGE HOWARD, hereinafter called Plaintiff, complaining of and about AMERIFIRST FINANCIAL, INC. and HELEN ROBINSON, hereinafter called Defendants, and for cause of action shows unto the Court the following:

### DISCOVERY CONTROL PLAN LEVEL

1.     Plaintiff intends that discovery be conducted under Discovery Level 2.

### PARTIES AND SERVICE

2.     Plaintiff, GEORGE HOWARD, is an Individual resident and citizen of Texas whose address is 20102 Hodde Lane, Pflugerville, Texas 78660.

3.     The last three numbers of GEORGE HOWARD's driver's license number are 030. The last three numbers of GEORGE HOWARD's social security number are 875.

4.     Defendant AMERIFIRST FINANCIAL, INC., a Nonresident Corporation, may be served pursuant to sections 5.201 and 5.255 of the Texas Business Organizations Code by serving the registered agent of the corporation, URS Agents, LLC, at 2601-2 N. Josey Lane, Suite 223, Carrollton, Texas 75007, its registered office. Service of said Defendant as described

above can be effected by certified mail, return receipt requested.

5.    Defendant HELEN ROBINSON, an Individual who is a resident and citizen of Texas, may be served with process at her place of employment at the following address:  930 S. Bell Boulevard, Unit 305, Office D, Cedar Park, Texas 78613.  Service of said Defendant as described above can be effected by personal service or certified mail, return receipt requested.

## JURISDICTION AND VENUE

6.    The subject matter in controversy is within the jurisdictional limits of this court.

7.    Plaintiff seeks:

a.    Only monetary relief of $75,000 or less, including interest, statutory or punitive damages and penalties, and attorney fees and costs.

8.    This court has jurisdiction over Defendant AMERIFIRST FINANCIAL, INC., because said Defendant purposefully availed itself of the privilege of conducting activities in the State of Texas and established minimum contacts sufficient to confer jurisdiction over said Defendant, and the assumption of jurisdiction over AMERIFIRST FINANCIAL, INC. will not offend traditional notions of fair play and substantial justice and is consistent with the constitutional requirements of due process.

9.    Furthermore, Plaintiff would show that Defendant AMERIFIRST FINANCIAL, INC. engaged in activities constituting business in the State of Texas as provided by Section 17.042 of the Texas Civil Practice and Remedies Code, in that said Defendant contracted with a Texas resident and performance of the agreement in whole or in part thereof was to occur in Texas.

10.    Defendant AMERIFIRST FINANCIAL, INC. has been licensed as a mortgage lender in the state of Texas since February 13, 2012 and has conducted business as a mortgage

lender in Texas since that time. Further, Defendant AMERIFIRST FINANCIAL, INC. maintains seven physical branches throughout Texas and regularly advertises as Amerifirst Financial of Texas. HELEN ROBINSON, an employee of AMERIFIRST FINANCIAL, INC. contracted with Plaintiff to enter into a mortgage loan in the state of Texas during August 2020. The purpose of the loan was to purchase real property located in Travis County, Texas

11.     This court has jurisdiction over Defendant HELEN ROBINSON because said Defendant is a resident and citizen of the State of Texas.

12.     Venue in Travis County is proper in this cause pursuant to Section 17.56 of the Texas Business and Commerce Code and under Section 15.011 of the Texas Civil Practice and Remedies Code because this action involves real property as provided by said Section, and this county is where all or part of the real property is located.

13.     Plaintiff commenced his suit against Defendants in the Travis County, Texas District Court, but Defendants removed this case to this Court.

## FACTS

14.     Plaintiff initially contacted his realtor, Kirk Moore of Realty Texas, on July 12, 2020, to purchase the property described as Lot 4, Block A, Rowe Valley Subdivision Section One, a subdivision in Travis County, Texas according to the map or plat thereof, recorded in Volume 90, Page 308, Plat Records, Travis County, Texas, commonly known as 20102 Hodde Lane, Pflugerville, Texas 78660 (hereinafter "the Property").

15.     Kirk Moore provided Plaintiff with contact information for a number of Austin-area lenders on July 18, 2020. On that list was HELEN ROBINSON, branch manager for AMERIFIRST FINANCIAL, INC.'s office in Cedar Park, Texas.

16.     Plaintiff contacted HELEN ROBINSON that same day, on July 18, 2020, to begin

the loan application process.

17.    HELEN ROBINSON became Plaintiff's personal loan officer, and he exclusively communicated with her about the loan.

18.    Plaintiff and the seller originally contracted to purchase the property for $215,000 with a closing date of September 15, 2020 on or about August 2, 2020.

19.    Plaintiff opened his account with AMERIFIRST FINANCIAL, INC. on August 5, 2020.

20.    On or about August 7, 2020, Plaintiff and HELEN ROBINSON confirmed that the loan amount for the mortgage would be $250,000.

21.    Plaintiff provided all documents requested by HELEN ROBINSON or other members of AMERIFIRST FINANCIAL, INC.'s staff working with HELEN ROBINSON within 48 hours of any such request.

22.    After asking about the status of the loan, Plaintiff received an email from Maria Hall of AMERIFIRST FINANCIAL, INC. requesting a survey of the property he was currently living in.

23.    Nearly one month prior to this, on August 19, 2020 Plaintiff's accounting manager, Lorraine Jester, sent an email to HELEN ROBINSON, Devona Postlethwait, and Marie Hall, all AMERIFIRST FINANCIAL, INC. employees, explaining that Plaintiff did not have a survey for the property he currently resided in, but that he was getting an appraisal done. At no point did any AMERIFIRST FINANCIAL, INC. employee notify Plaintiff or Lorraine Jester that the appraisal alone would be insufficient for the loan to close. HELEN ROBINSON, Devona Postlethwait, and Marie Hall all knew that Plaintiff did not have a survey, but none of them told him to order one so that the loan could close.

24.     There were no further communications by any AMERIFIRST FINANCIAL, INC. employee regarding a survey for the Property.

25.     At no point prior to September 10, 2020 was Plaintiff told that having a survey on his original property in addition to the appraisal would be necessary to closing the loan. HELEN ROBINSON even admitted in a September 10, 2020 email to Plaintiff that she wasn't sure how the land survey issue was "just now coming up."

26.     In that same email, HELEN ROBINSON stated, for the first time during the loan process, that the loan could not be closed without a survey.

27.     On September 2, 2020, Plaintiff received closing disclosures from HELEN ROBINSON. However, by September 10, 2020 Plaintiff still had no confirmation that the loan was approved.

28.     On September 11, 2020, HELEN ROBINSON asked Plaintiff's title company for a copy of a survey, but none was found. Meanwhile that same day, Plaintiff asked his appraiser for a surveyor recommendation, but did not get a response. Kirk Moore asked the same appraiser for a surveyor recommendation on September 14, 2020 but again received no response.

29.     With no response from any surveyors or Plaintiff's appraiser by the end of that day, it became clear that no survey could be completed in time for closing. Kirk Moore sent an email to Plaintiff and HELEN ROBINSON notifying them that the contract would need to be amended and the closing rescheduled due to the lack of survey. Kirk Moore also reported this to the realtor for the seller of the Property, Danny Wilson, that same day.

30.     However, Danny Wilson reported on September 15, 2020 that the sellers would not agree to any amendments or extension because he was receiving other offers on the Property at the significantly higher price of $260,000.

31.     HELEN ROBINSON confirmed in an email to Plaintiff that a survey is needed in order to fund the loan, but she had "submitted for our clear to close status" and that "[o]rdinarily the survey is a prior to doc condition, but we are making an exception in the interest of closing this loan and funding it as soon as possible," since Plaintiff was a very well-qualified buyer and would have had his loan approved were it not for HELEN ROBINSON's mistake. However, the funding did not happen "as soon as possible" as HELEN ROBINSON had represented.

32.     Later that day on September 14, acting on Plaintiff's behalf, Kirk Moore tried to save the transaction by offering to pay the new list price of $260,000 and closing on the property on September 30, 2020. Danny Wilson accepted this offer because it would result in a quicker sale, but stated that if Plaintiff could not pay that price at the next closing date he would be moving forward with one of the other potential buyers.

33.     On September 16, 2020, the day after the original closing date, HELEN ROBINSON ordered a rushed survey and covered the $1,250 cost.

34.     The survey was expected to be completed by September 23, 2020, one week prior to the new closing date. That same day, Plaintiff requested that HELEN ROBINSON increase his loan amount from $250,000 to $280,000 to account for the purchase price increase.

35.     HELEN ROBINSON replied that day stating that she would "edit the loan amount to $280,000 right away."

36.     However, on September 27, 2020, just three days before the new closing date, Plaintiff received a uniform residential loan application and closing disclosure form from HELEN ROBINSON. This was the first time in which Plaintiff received confirmation of the loan amount from HELEN ROBINSON since requesting a change. Plaintiff was disturbed to find that the loan application provided to him for signature showed a loan amount of $250,000 instead of

$280,000. Once again, HELEN ROBINSON committed a fatal error that would prevent Plaintiff from closing on the Property.

37.     Additionally, on September 25, 2020, HELEN ROBINSON requested that Plaintiff sign and backdate a page of the closing disclosure form from August 9, 2020 via email. She requested the backdated page again on September 28, 2020. HELEN ROBINSON had already received the signed and dated closing disclosure form prior to the first closing date but had apparently lost it.

38.     On September 28, 2020 Kirk Moore contacted HELEN ROBINSON via email regarding the incorrect loan amount, the fact that the new closing date would again be missed, the $45,000 price increase, and the potential loss of the Property altogether due to her mistakes.

39.     Kirk Moore was also disturbed that HELEN ROBINSON recommended that Plaintiff take a second loan of $30,000 at an 8% interest rate to bring the total loan amounts up to $280,000. HELEN ROBINSON recommended this second loan despite the fact that the $250,000 loan was at a much lower interest rate of 2.625% and that the loan amount was incorrect due to her own error. Kirk Moore demanded that HELEN ROBINSON contact her management to ensure that Plaintiff would get funded for the $280,000 loan by Friday, October 2, 2020 at the latest. Again afraid of losing the Property for good due to HELEN ROBINSON's incompetence, Plaintiff withdrew $10,942.43 from his savings on September 30, 2020 to try to save the purchase.

40.     On September 29, 2020, HELEN ROBINSON sent a response to Kirk Moore's emails, stating that she discussed the issues in the transaction with Jeremy Smith, division manager of AMERIFIRST FINANCIAL, INC. (and presumably, HELEN ROBINSON's manager) and president of the Texas Mortgage Association. However, when Jeremy Smith

provided a response to Kirk Moore's email, he seemed completely unaware of what happened. Kirk Moore provided a basic summary of the situation in writing and requested that Jeremy Smith speak with his manager at Realty Texas, Lynda Conway. Lynda Conway then sent Jeremy Smith an email laying out the issues and requesting a resolution during a phone call.

41.     Lynda Conway reported back to Plaintiff that during her call with Jeremy Smith, he took no responsibility for the problems caused by HELEN ROBINSON and tried to blame the realtors for the problems in the transaction despite all issues being caused solely by HELEN ROBINSON and other employees of AMERIFIRST FINANCIAL, INC.

42.     Later, Jeremy Smith spoke to Plaintiff directly via phone call and complained about only making $900 on the deal and having to pay $1,250 for a rushed survey. No attempts at resolution, let alone acknowledgement of the hardships and damages Plaintiff faced due to AMERIFIRST FINANCIAL, INC. and HELEN ROBINSON's failure to perform the basic duties of a brokerage firm and individual broker were even alluded to by Jeremy Smith during these phone calls.

43.     On May 26, 2021, counsel for Plaintiff sent Jeremy Smith of AMERIFIRST FINANCIAL, INC. a demand letter reciting these facts and stating Plaintiff's claim for damages. Counsel for Plaintiff sent the demand letter via certified mail, regular mail, and electronic mail. Jeremy Smith and AMERIFIRST FINANCIAL, INC. denied any responsibility for the actions of their employee, HELEN ROBINSON, and the damages her behavior caused.

## DECEPTIVE TRADE PRACTICES

44.     Plaintiff would show that Defendants engaged in certain false, misleading and deceptive acts, practices and/or omissions actionable under the Texas Deceptive Trade Practices - Consumer Protection Act ("DTPA", Texas Business and Commerce Code, Chapter 17.41, _et_

seq.), as alleged herein below.

45.     To succeed on a DTPA claim, the plaintiff must satisfy four elements: (1) the plaintiff is a consumer as defined by the DTPA; (2) the defendant may be sued under the DTPA; (3) the defendant committed wrongful acts under the DTPA; and (4) the defendant's actions were a producing cause of the plaintiff's damages. TEX. BUS. & COM. CODE §17.50(a) (West 2011); *Amstadt v. U.S. Brass Corp.,* 919 S.W.2d 644, 649 (Tex. 1996) ("A consumer must, in order to prevail on a DTPA claim, . . . establish that each defendant violated a specific provision of the Act, and that the violation was a producing cause of the claimant's injury.")

46.     The DTPA defines a "consumer" as a person who seeks or acquires by purchase or lease, any goods or services. TEX. BUS. & COMM. CODE § 17.45(4) (West 2011). "Goods" are defined by the DTPA as tangible chattels or real property purchased or leased for use. TEX. BUS. & COMM. CODE § 17.45(1) (West 2011). "Services" are defined by the DTPA as work, labor, or other service purchased or leased for use. TEX. BUS. & COMM. CODE § 17.45(2) (West 2011). Plaintiff is a consumer under the DTPA in that he is an individual who sought or acquired the services of HELEN ROBINSON, a mortgage loan officer, to purchase real property. See TEX. BUS. & COMM. CODE § 17.45(2),(4) (West 2011).

47.     Plaintiff was a consumer under the DTPA. Plaintiff retained HELEN ROBINSON and AMERIFIRST FINANCIAL, INC. to guide him through the loan process and to obtain and provide a loan for him to purchase a home for him to live in. HELEN ROBINSON was his personal loan officer, and they developed a personal relationship where Plaintiff relied and trusted her and AMERIFIRST FINANCIAL, INC.

48.     As a consumer under the DTPA, Plaintiff may bring suit against any person who violates the DTPA when acting within the scope of their employment. *Miller v. Keyser*, 90

S.W.3d 712, 717 (Tex. 2002). Further, all incidents giving rise to the claims of this suit occurred while HELEN ROBINSON was engaged in or about the furtherance of the affairs or business of her employer, AMERIFIRST FINANCIAL, INC. *See Leordenau v. Am. Prot. Ins. Co.*, 330 S.W.3d 239, 241 (Tex. 2010) (defining scope of employment).

49.     Defendants engaged in an "unconscionable action or course of action" to the detriment of Plaintiff as that term is defined by the DTPA. TEX. BUS. & COMM. CODE § 17.45(5) (West 2011). "Unconscionable action or course of action" is defined as taking advantage of the lack of knowledge, ability, experience, or capacity of Plaintiff to a grossly unfair degree. *Id*. When considering what relates to gross unfairness, Texas courts define it as the defendant's mental attitude demonstrating knowing indifference to the fact their actions may put the plaintiff in peril. *Chastain v. Koonce*, 700 S.W.2d 579, 583 (Tex. 1985).

50.     Plaintiff is not trained as a loan officer and relied on HELEN ROBINSON's expertise as an experienced loan officer and AMERIFIRST FINANCIAL, INC. as a nationwide financial lender to obtain a mortgage for him. Despite this, HELEN ROBINSON and her superiors at AMERIFIRST FINANCIAL, INC. displayed gross unfairness to Plaintiff's ability to obtain a loan by not only failing to ask Plaintiff for required documentation that is part of every mortgage transaction processed by her brokerage firm, causing him to miss his closing date on the Property and lose his initial purchase price, but also by failing to increase the loan amount by $30,000.00 to accommodate the new purchase price and then suggesting that Plaintiff take an additional loan at nearly four times the interest rate of the original $250,000.00 loan to cover the missing amount.

51.     The survey requirement could have been waived by AMERIFIRST FINANCIAL, INC., as they had the absolute authority to do so. However, AMERIFIRST FINANCIAL, INC.

chose not to waive the requirement and allowed Plaintiff to be injured by HELEN ROBINSON's incompetence. Clearly, HELEN ROBINSON did not have any regard for Plaintiff because after the first error in processing the loan, she continued to display a lack of care towards Plaintiff's attempts to purchase the Property. It appeared that she and her superior at AMERIFIRST FINANCIAL, INC., Jeremy Smith, were more concerned with obtaining more money from the transaction by attempting to force Plaintiff to take a loan with a significantly higher interest rate. This is furthered by Jeremy Smith's phone call with Plaintiff and his realtors, in which Jeremy Smith complained about not making very much money on the transaction.

52.     HELEN ROBINSON failed to increase the loan amount as requested by Plaintiff, knowing that he would be unable to close if she did not do so. She simply did not care. When Plaintiff told her that the loan amount was incorrect, she gave a suggestion that she knew was unfair and was designed to benefit herself and her brokerage firm. Again, she did not care about Plaintiff's role in the transaction and was only trying to benefit herself. Her behavior was grossly unfair and took advantage of Plaintiff's lack of expertise in order to benefit herself and her brokerage firm, AMERIFIRST FINANCIAL, INC.

53.     Plaintiff would show that the acts, practices and/or omissions complained of were the producing cause of Plaintiff's damages described herein. HELEN ROBINSON's failure to disclose to Plaintiff that he needed to provide required documentation for her brokerage firm to process the loan caused Plaintiff to lose the originally contracted-for price for the Property. After missing the closing due to HELEN ROBINSON's inability to properly perform her job, the seller demanded Plaintiff pay $45,000.00 more than the original contract price to secure the unique parcel of land. But for HELEN ROBINSON's failure to perform her job properly and disclose required information to Plaintiff, he would not have had to pay this increased amount for the

Property. Further, HELEN ROBINSON failed to increase the price of the loan prior to closing. In order to avoid losing the parcel for good due to HELEN ROBINSON's incompetence, Plaintiff had to pay $10,942.43 from his retirement savings to fund the transaction. The acts and omissions described herein occurred within the scope of HELEN ROBINSON's employment with AMERIFIRST FINANCIAL, INC. But for HELEN ROBINSON's failure to increase the loan as requested, Plaintiff had to use this retirement savings to pay for the Property.

54. Plaintiff would further show the acts, practices and/or omissions complained of under Section 17.46(b) of the Texas Business and Commerce Code were relied upon by Plaintiff to Plaintiff's detriment. Plaintiff rightfully believed that HELEN ROBINSON and other AMERIFIRST FINANCIAL, INC. employees had disclosed all necessary information to him to secure the loan transaction due to her experience and expertise as a loan officer, but lost the original contract for sale of the unique Property due to her failure to tell him all necessary loan requirements for her brokerage firm. Plaintiff further relied on HELEN ROBINSON to secure the loan at a higher rate, but when she failed to do so, he was forced to take money out of his savings in order to avoid losing the Property for good due to her failure.

55. Plaintiff timely notified Defendants of such complaint pursuant to Section 17.505(a) of the Texas Business and Commerce Code by letter dated May 26, 2021, and would show compliance with all conditions precedent to the filing of this suit and recovery of additional damages and attorney's fees.

## COMMON LAW FRAUD

56. To prevail on a fraud claim, Plaintiff must show that (1) a defendant made a material representation that was false; (2) the defendant knew the representation was false or made it recklessly as a positive assertion without any knowledge of its truth; (3) the defendant

intended to induce the plaintiff to act upon the representation; and (4) the plaintiff actually and justifiably relied upon the representation and thus suffered injury. *See Trenholm v. Ratcliff,* 646 S.W.2d 927, 930 (Tex. 1983).

57.    After bungling the first closing date by failing to disclose that a survey was required, HELEN ROBINSON made the material, false representation on September 16, 2021 that she would "increase the loan amount [to $280,000] right away" in an email to Plaintiff. HELEN ROBINSON did not increase the loan amount at any time, and likely had no intent to do so in an attempt to force Plaintiff to take a second necessary loan at an 8% interest rate and therefore make more money on the transaction. As such, HELEN ROBINSON made this representation with the knowledge it was false. HELEN ROBINSON made the representation to Plaintiff with the intent of inducing him to stay on as a customer of AMERIFIRST FINANCIAL, INC. As a result, Plaintiff continued to use HELEN ROBINSON's services to secure the loan based on her representation. Plaintiff rightfully believed HELEN ROBINSON would increase the loan amount as requested because it was a simple part of her job as an experienced loan officer. Plaintiff further relied on this representation to his detriment because HELEN ROBINSON never increased the loan amount and attempted to induce him to take a second loan for $30,000 at nearly four times the interest rate of the $250,000 loan. AMERIFIRST FINANCIAL, INC. would have secured this second loan, and AMERIFIRST FINANCIAL, INC. would have financially benefitted if Plaintiff was to accept this second loan.

58.    Plaintiff was forced to take out $10,942.43 from his savings to ensure that he didn't lose the Property for good, as he otherwise would not have had enough money on the date of closing.

59.    As a proximate result of such fraud, Plaintiff sustained the damages described

more fully herein.

**NEGLIGENCE**

60.     To prevail on a negligence claim, a plaintiff must prove 1) a legal duty owed by one person to another; 2) a breach of that duty; and 3) damages proximately resulting from the breach. *El Chico Corp. v. Poole,* 732 S.W.2d 306, 311 (Tex. 1987); *Rosas v. Buddies Food Store,* 518 S.W.2d 534, 536 (Tex. 1975). When determining whether a duty existed, Texas courts will consider multiple factors, including the risk, foreseeability, and likelihood of any injury weighed against the social utility of the defendant's conduct, the difficulty of guarding against the injury, and the consequences of placing the burden to guard against that injury on the defendant. *Otis Eng'g Corp. v. Clark,* 668 S.W.2d 307, 309 (Tex. 1983). A duty to control the conduct of third persons will arise in special relationships between the actor and third person, such as the relationship between an employer and employee. *Painter v. Amerimex Drilling I, Ltd.*, 561 S.W.3d 125 (Tex. 2018); *Greater Houston Transp. Co. v. Phillips*, 801 S.W.2d 523, 525 (Tex. 1991). The employer can be held liable for the negligence of the employee if the employee was acting within the scope of their employment. *Painter v. Amerimex Drilling I, Ltd.*, 561 S.W.3d 125 (Tex. 2018). An action is considered to be within the employee's scope of employment if their employer had the right to direct and control the employee's performance at the time of the alleged negligent action. *St. Joseph Hosp. v. Wolff*, 94 S.W.3d 513, 542 (Tex. 2003).

61.     Plaintiff retained HELEN ROBINSON and AMERIFIRST FINANCIAL, INC. to guide him through the loan process and obtain a loan for him.

62.     As Plaintiff's personal loan officer, HELEN ROBINSON owed Plaintiff a duty to facilitate and close the loan for the Property following Plaintiff's approval for the loan by

AMERIFIRST FINANCIAL, INC. HELEN ROBINSON was specifically recommended to Plaintiff by his realtor, who stated that he could "vouch that she is very good at her job" and that he provided her with a summary of Plaintiff's goals as a buyer. Based on the recommendations of Kirk Moore, Plaintiff decided to use HELEN ROBINSON as his mortgage broker. HELEN ROBINSON developed and facilitated a personal relationship with Plaintiff. Plaintiff trusted HELEN ROBINSON to personally guide him through the loan process and obtain the mortgage loan for the Property and believed she provided him with all necessary information and instruction to ensure the loan would process on time. As an experienced loan officer with training and knowledge that Plaintiff did not have, HELEN ROBINSON had a duty to tell Plaintiff what documents were required by AMERIFIRST FINANCIAL, INC. in order to obtain the loan. Plaintiff believed HELEN ROBINSON had explained all requirements to him, and he complied with each request she made. However, HELEN ROBINSON breached her duty by failing to disclose the survey requirement until it was too late for Plaintiff to comply, causing Plaintiff to lose both the original closing date and purchase price of $215,000. AMERIFIRST FINANCIAL, INC. created its own requirements for closing loans and therefore had the right to control HELEN ROBINSON's actions when attempting to secure the loan for Plaintiff.

63.     HELEN ROBINSON also had a duty to increase Plaintiff's loan amount from $250,000 to $280,000. Plaintiff requested HELEN ROBINSON do this after Plaintiff was forced to pay $45,000 more for the Property following the missed closing date due to HELEN ROBINSON failing to disclose to Plaintiff all of her employer's loan requirements. Again, HELEN ROBINSON breached her duty as Plaintiff's mortgage broker to secure the loan for the correct amount. When HELEN ROBINSON failed to increase Plaintiff's loan amount as required, HELEN ROBINSON suggested that Plaintiff take a second loan for $30,000 at an

interest rate nearly four times as high as the interest rate in Plaintiff's original loan for $250,000. HELEN ROBINSON was not acting in good faith when attempting to help Plaintiff and instead was acting for the benefit of AMERIFIRST FINANCIAL, INC.

64.     Additionally, HELEN ROBINSON had a duty to maintain all legal documents provided to her and AMERIFIRST FINANCIAL, INC. by George Howard. However, HELEN ROBINSON breached this duty as well by losing a legal document signed by Plaintiff. HELEN ROBINSON requested that Plaintiff re-sign and backdate the loan disclosure document on September 25, 2020 and again on September 28, 2020. Her employer, AMERIFIRST FINANCIAL, INC., permitted her to make this request and while they had the right to stop her, they did not do so.

65.     HELEN ROBINSON did not exercise ordinary care in performing her duties as a mortgage broker as shown by her failure to tell Plaintiff what documents were necessary to facilitate closing on the loan, her failure to order the survey as a mortgage broker normally does, her failure to increase the loan amount prior to closing on the Property, her suggestion that Plaintiff take an extra loan at nearly quadruple the interest rate of the original loan, and by losing legal documents signed and dated by Plaintiff concerning the loan. But for HELEN ROBINSON's failure to exercise ordinary care in performing her duties as Plaintiff's mortgage broker, and AMERIFIRST FINANCIAL, INC.'s failure to stop or correct her behavior, Plaintiff would not have suffered monetary loss when trying to purchase the Property.

66.     The acts and/or omissions of Defendants described hereinabove by which Defendants breached such duty constitute a proximate cause of the damages of Plaintiff described more fully hereinbelow, for which Defendants are liable to Plaintiff.

## HELEN ROBINSON'S INDIVIDUAL LIABILITY

67.     HELEN ROBINSON is individually liable for her acts and omissions. Employees may always be held "individually liable for their own torts, even when committed in the course of employment" and the employer and employee may be held jointly and severally liable. *See Franka v. Velasquez*, 332 S.W.3d 367, 383 (Tex. 2011); *Leyendecker & Assocs., Inc. v. Wechter*, 683 S.W.2d 369, 375 (Tex. 1984); *see also Leonard Duckworth, Inc. v. Michael L. Field & Co.*, 516 F.2d 952, 958 (5th Cir. 1975) (stating "[u]nder general tort and agency law, where an agent commits a tort while acting within the scope of his employment as the agent of another, he will be personally liable in damages, even though his principal is also liable under the doctrine of respondeat superior.").

68.     Plaintiff was injured by HELEN ROBINSON's and AMERIFIRST FINANCIAL, INC.'s acts and omissions, so they are jointly and severally liable to him. But if AMERIFIRST FINANCIAL, INC. takes no responsibility for HELEN ROBINSON's acts and omissions, as Jeremy Smith stated, then HELEN ROBINSON would certainly be individually liable for her acts and omissions, since someone should take responsibility for injuring Plaintiff.

## RESPONDEAT SUPERIOR

69.     Under the doctrine of respondeat superior, an employer is vicariously liable for the negligence of an agent or employee acting within the scope of his or her agency or employment, although the principal or employer has not personally committed a wrong. *Baptist Memorial Hosp. Sys. v. Sampson*, 969 S.W.2d 945, 947 (Tex. 1998) (citing Restatement (Second) of Agency § 219 (1958)). As HELEN ROBINSON's employer and/or principal, AMERIFIRST FINANCIAL, INC. is also liable for her acts and omissions.

## NEGLIGENT HIRING, TRAINING, SUPERVISION, RETENTION

70.     While HELEN ROBINSON is personally liable for injuring Plaintiff, AMERIFIRST FINANCIAL, INC. is also liable for failing to hire, train, supervise, or retain her properly.

71.     The elements of a claim for negligent hiring, training, supervision, and retention are like all negligence claims: (1) the defendant owed a legal duty to the plaintiff, (2) the defendant breached that duty, (3) the plaintiff suffered damages, and (4) the damages were proximately caused by the defendant's breach. *Latimer v. Mem'l Hermann Hosp. Sys.*, 14-09-00925-CV, 2011 WL 175504, at *3 (Tex. App.—Houston [14th Dist.] Jan. 20, 2011, no pet.). AMERIFIRST FINANCIAL, INC. has a duty to hire qualified, competent employees to engage with and help members of the public who trust the employees to obtain loans to purchase homes to live in. AMERIFIRST FINANCIAL, INC. then has a continuing duty to train and supervise their employees to engage with and help members of the public who trust the employees to obtain loans to purchase homes to live in. AMERIFIRST FINANCIAL, INC. has a duty to discipline or terminate employees who are not able to engage with and help members of the public who trust the employees to obtain loans. While HELEN ROBINSON appeared knowledgeable and competent as a loan officer to Plaintiff, Plaintiff questions whether she was trained, for example, on the rules pertaining to the need for a survey, procedures for the loss of legal documents containing a client's signature, and how to increase a loan amount prior to closing. While HELEN ROBINSON, Devona Postlethwait, and Marie Hall all knew that Plaintiff did not have a survey, none of them told him to order one so that the loan could close.

72.     HELEN ROBINSON lost a signature page for a contract executed by Plaintiff, but never explained the procedure for remedy, only asking that Plaintiff re-sign and backdate the

new page. Plaintiff was concerned this could be fraudulent. HELEN ROBINSON seemingly was incapable of performing the most basic task by increasing the loan amount when requested by Plaintiff, and while HELEN ROBINSON assured him she would change the loan amount, she failed to do so prior to closing. Further, Plaintiff and his realtors attempted to contact HELEN ROBINSON's superior at AMERIFIRST FINANCIAL, INC. who believed HELEN ROBINSON did not do anything wrong and that she and the other AMERIFIRST FINANCIAL, INC. employees performed their job appropriately. If HELEN ROBINSON, Devona Postlethwait, and Marie Hall did not know the procedures, causing Plaintiff not to fulfill his contractual obligations under the sales contract, then AMERIFIRST FINANCIAL, INC. failed to properly hire, train, supervise, or retain them.

## ECONOMIC AND ACTUAL DAMAGES

73.     Plaintiff sustained the following economic and actual damages as a result of the actions and/or omissions of Defendants described hereinabove:

(a)     Out-of-pocket expenses, including but not limited to paying $45,000 more for the price of the Property and $10,942.43 taken from Plaintiff's savings to fund the transaction.

(b)     Interest and/or finance charges assessed against and paid by Plaintiff.

(c)     Loss of the "benefit of the bargain."

(d)     Reasonable medical care and expenses for stress-related illnesses.

## DAMAGES FOR MENTAL ANGUISH

74.     Plaintiff would further show that the false, misleading and deceptive acts, practices and/or omissions described hereinabove were committed "knowingly," as provided by Section 17.45(9) of the Texas Business and Commerce Code, in that Defendants had actual awareness of the falsity, deception, or unfairness of such acts, practices, and/or omissions.

75.     As a result of such acts, practices and/or omissions, Plaintiff sustained a high degree of mental pain and distress of such nature, duration and severity that would permit the recovery of damages for mental anguish pursuant to Section 17.50(b) of the Texas Business and Commerce Code.

## MULTIPLE DAMAGES

76.     As alleged hereinabove, Plaintiff would show that the false, misleading and deceptive acts, practices and/or omissions complained of herein were committed "knowingly" in that Defendants had actual awareness of the falsity, deception, or unfairness of such acts, practices, and/or omissions.

77.     Therefore, Plaintiff is entitled to recover multiple damages as provided by 17.50(b)(1) of the Texas Business and Commerce Code.

## EXEMPLARY DAMAGES

78.     Plaintiff would further show that the acts and omissions of Defendants complained of herein were committed knowingly, willfully, intentionally, with actual awareness, and with the specific and predetermined intention of enriching said Defendants at the expense of Plaintiff.  In order to punish said Defendants for such unconscionable overreaching and to deter such actions and/or omissions in the future, Plaintiff also seeks recovery from Defendants for exemplary damages as provided by Section 41.003(a)(1) of the Texas Civil Practice and Remedies Code and by Section 27.01 of the Texas Business and Commerce Code.

## ATTORNEY'S FEES

79.     Request is made for all costs and reasonable and necessary attorney's fees incurred by or on behalf of Plaintiff herein, including all fees necessary in the event of an appeal of this cause to the Court of Appeals and the Supreme Court of Texas, as the Court deems

equitable and just, as provided by: (a) Section 17.50(d) of the Texas Business and Commerce Code; (b) Section 27.01(e) of the Texas Business and Commerce Code; and, (c) common law.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff, George Howard, respectfully prays that the Defendants be cited to appear and answer herein, and that upon a final hearing of the cause, judgment be entered for the Plaintiff against Defendants, jointly and severally, for the economic and actual damages requested hereinabove in an amount in excess of the minimum jurisdictional limits of the Court, together with prejudgment and postjudgment interest at the maximum rate allowed by law, attorney's fees, costs of court, and such other and further relief to which the Plaintiff may be entitled at law or in equity, whether pled or unpled.

Respectfully submitted,

SHEEHAN LAW, PLLC

By: /s/*Farren Sheehan*
       Farren Sheehan
       Texas Bar No. 24000751
       Email: *fsheehan@farrensheehanlaw.com*
       Ashley Kraus
       Texas Bar No. 24116641
       Email: *ashley@farrensheehanlaw.com*
       1601 E. Pfennig Lane
       Pflugerville, TX 78660
       Tel. (512) 251-4553
       Fax. (888) 251-4959
       Attorneys for Plaintiff,
       George Howard

PLAINTIFF HEREBY DEMANDS TRIAL BY JURY

*FIRST AMENDED COMPLAINT*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was sent to counsel of record by filing of the foregoing using the Court's ECF filing system on this 24th day of September, 2021.


/s/*Farren Sheehan*
Farren Sheehan